UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 11-10077-RGS

UNITED STATES OF AMERICA

v.

RAMONE ARAKELOW

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

November 7, 2012

STEARNS, D.J.

Defendant Ramone Arakelow was charged in two counts of a multi-defendant Indictment with conspiring to possess cocaine with the intent to distribute and conspiring to commit robbery affecting interstate commerce (Hobbs Act robbery). At the close of the government's case-in-chief, Arakelow, through counsel, moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, claiming that the government had failed to produce evidence sufficient to support his conviction of the Hobbs Act conspiracy.[1]

Arakelow's argument for judgment of acquittal challenges the government's evidence in two respects: first, as to whether it established the existence of a Hobbs Act

---

[1] The jury acquitted Arakelow of the cocaine conspiracy charge.

conspiracy vel non; and second, if it did, whether a rational jury could have found Arakelow to have been a knowing and willful member of the conspiracy. The standard of review is a familiar one.

> In determining whether particular evidence is sufficient to ground a conviction, we take the facts and all reasonable inferences therefrom in the light most agreeable to the jury's verdict. If, on that view, the prosecution has adduced sufficient evidence of the essential elements of the crime such that a rational jury could find the defendant guilty beyond a reasonable doubt, the insufficiency challenge fails.

*United States v. Walker*, 665 F.3d 212, 224 (1st Cir. 2011) (citations omitted). *See also United States v. Pérez-Meléndez*, 599 F.3d 31, 40 (1st Cir. 2010) ("[D]efendants challenging convictions for insufficiency of evidence face an uphill battle on appeal.") (citation omitted). The jury's verdict must stand "unless the evidence, viewed in the light most hospitable to the government's theory of the case, could not have persuaded a rational trier of fact, beyond any reasonable doubt, of the defendant's guilt." *United States v. Soler*, 275 F.3d 146, 150 (1st Cir. 2002), citing *United States v. Lara*, 181 F.3d 183, 200 (1st Cir. 1999).

In the indulgent light of a Rule 29 review, a rational jury could have found the following material facts. In April of 2010, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) began an investigation of Robert Kenney for various firearms violations. After Kenney made statements to Thathyanno Desa (an auxiliary Somerville

police officer acting in an informant capacity) about his prior participation in robberies, ATF devised a sting operation dangling the opportunity to rob an apartment in Malden, Massachusetts, purportedly used by Brazilian drug traffickers as a stash house. As spun by Desa, the traffickers had concealed $200,000 in cash in the wall of the apartment and were expecting a multi-kilogram delivery of cocaine from suppliers in New York. As matters progressed, Kenney recruited co-defendant Christopher Littlejohn to add some muscle to the planned heist. After being warned by Desa that at least two traffickers would likely be present in the apartment, Kenney assured Desa that he had "two guys that'll do it" (Littlejohn being one of them). To further develop the investigation, Desa stalled the date of the robbery until February 11, 2011.

At 4:40 a.m. on the appointed day, Kenney and Littlejohn met Desa at a Lowe's parking lot in Saugus, Massachusetts. The defendants arrived in a truck owned by Kenney with Arakelow in tow. This meeting marked Arakelow's first and only appearance in the conspiratorial plot. Although ATF had arranged for the Massachusetts State Police to equip Desa with a concealed tape recorder, the taping equipment malfunctioned. Trooper James Bruce, who corroborated Desa's testimony at trial, was able to monitor the broadcast of the conversation between Desa and the three defendants. According to Trooper Bruce, Arakelow actively participated in a vigorous discussion of how much force would have to be used to restrain the drug

dealer who the informant reported to be then present and to locate the compartment in the wall where the cash was hidden.[2] The defendants agreed that the dealer would have to be tied up securely enough to allow them time to make "a clean break" with the proceeds of the robbery.

As the conversation with the informant concluded, a State Police tactical team initiated an arrest. In a subsequent search of Kenney's truck, troopers found, among other suspicious items, two zip-ties, a roll of duct tape, a pair of rubber gloves, a ski mask, two police radios, and a police light. During a videotaped interrogation, Arakelow told officers that he believed that he had been hired by Kenney to help install sheetrock at an unknown location, although he was unable to explain why the men possessed no sheetrocking tools and materials. Later in his statement, Arakelow admitted that he had overheard Desa broach the subject of a robbery, but denied participating in that facet of the conversation.

Arakelow's challenge is directed in the first instance to the purported lack of proof that the defendants intended to carry out the robbery by using force (as opposed to trick or deception), stressing the fact that the defendants did not bring a firearm or other dangerous weapon to the launching pad. The argument is based on a faulty

---

[2] While Trooper Bruce did not know Arakelow or recognize his voice, he testified that he was able to clearly distinguish two distinct voices other than Kenney's and Desa's (whose voices he did know) participating in the conversation.

premise. The Hobbs Act, 18 U.S.C. § 1951, is not an armed robbery statute. While the use of a weapon certainly satisfies the statute, the Act requires only that the unlawful taking of personal property from its possessor be accomplished "by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property . . . ." *Id. See also United States v. Morales-Machuca*, 546 F.3d 13, 20 (1st Cir. 2008). That the defendants intended to use force, actual or threatened, to accomplish the robbery is plainly evident from their statements on the morning of the robbery that "they were going to grab [the drug dealer] and they were going to forcefully restrain him . . . binding him up and making sure that he was going to remain incapacitated for at least ten minutes to buy them a clean break." Testimony of James Bruce, Trial Tr. 2, at 107.[3]

Arakelow's second argument, that there was insufficient evidence to establish his participation in the conspiracy (positing its existence),[4] deserves even shorter shrift.

---

[3] The expressed intent was corroborated by the zip-ties and roll of duct tape found in Kenney's truck in which the defendants (Arakelow among them) traveled to Saugus.

[4] In establishing the existence of a conspiracy, the government may rely on evidence that is wholly circumstantial in nature. *United States v. Valerio*, 48 F.3d 58, 63 (1st Cir. 1995). This would include Kenney's statement to Desa during the planning of the robbery that he had recruited two men to assist him, and the improbability that he and Littlejohn would have arrived at the staging area with an innocent Arakelow in tow. *See United States v. Tejeda*, 974 F.2d 210, 213 (1st Cir. 1992) ("As we have said many times, 'the fact-finder may fairly infer . . . that it runs counter to human

To prove membership in a conspiracy, the government need not show a defendant to have been present at the conspiracy's inception or to have played a central or even significant role in advancing its goals.[5] *First Circuit Pattern Jury Instructions* § 4.03 (1998). *See also United States v. Brandon*, 17 F.3d 409, 428 (1st Cir. 1994) ("Once a conspiracy is established, as well as defendant's intent to further it, any connection between the defendant and the conspiracy, even a slight one, will be sufficient to establish knowing participation."); *United States v. Soto-Beníquez*, 356 F.3d 1, 18 (1st Cir. 2003) ("Advancing the aim of the conspiracy can involve performing ancillary functions such as processing and cooking drugs, procuring weapons, collecting monies, enforcing discipline, chastising rivals, accounting, and the like, so long as such actions are performed with the aim of furthering the conspiracy.").[6] The jury's verdict that a

---

experience to suppose that criminal conspirators would welcome innocent nonparticipants as witnesses to their crimes.'"). The jury was also entitled to weigh the incredulous explanation that Arakelow gave to police for his incriminating presence in Saugus.

[5] There is also no substance to Arakelow's argument that the evidence failed to establish the interstate commerce element of the Hobbs Act. *See United States v. Guerrier*, 669 F.3d 1, 7-8 (1st Cir. 2011) (the depletion of a victim-dealer's business assets sufficient to establish a Hobbs Act interstate commerce nexus). Finally, there is nothing inconsistent in the jury's verdict finding Arakelow not guilty of the drug conspiracy but guilty of the conspiracy to commit robbery, nor would it matter if there was. *See United States v. Lopez*, 944 F.2d 33, 41 (1st Cir. 1991).

[6] That the conspiracy was doomed to fail from the outset is immaterial. "[A] culpable conspiracy may exist even though, because of the misapprehension of the

conspiracy existed and that Arakelow was a willing participant was amply supported by the evidence.

ORDER

For the foregoing reasons, defendant's motion for judgment of acquittal is DENIED.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

conspirators as to certain facts, the substantive crime which is the object of the conspiracy may be impossible to commit." *United States v. Waldron*, 590 F.2d 33, 34 (1st Cir. 1979).